UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEXTRON FINANCIAL CORPORATION,<br><br>                        Plaintiff,<br><br>v.<br><br>MICHAEL S. GALLEGOS,<br><br>                        Defendant. | Case No.: 15CV1678-LAB (DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL FURTHER DEPOSITIONS AND REQUEST FOR SANCTIONS**<br><br>**[ECF No. 63, 72]** |

On April 22, 2016, Judgment Creditor, SPE LO Holdings ("SPE LO"), assignee of Textron Financial Corporation ("Textron") filed a Motion to Compel Further Depositions and Request for Sanctions Pursuant to Federal Rule of Civil Procedure 37. (ECF No. 63.) On May 19, 2016, Judgment Debtor, Michael S. Gallegos ("Gallegos") filed an opposition, and on May 26, 2016, SPE LO filed a reply. (ECF Nos. 68, 70.) Having considered the parties' submissions and supporting exhibits, the Court hereby **GRANTS in part**, and **DENIES in part** SPE LO's motion.[1]

---

[1] The Court finds the instant motion is suitable for determination upon the moving papers under Civil Local Rule 7.1(d). Therefore, Gallegos Request for Oral Argument (ECF No. 72) is **DENIED**.

1

# I. BACKGROUND

On November 30, 2010, Textron obtained a judgment against Gallegos in the amount of $21,921,165.45 in the United States District Court for the District of Rhode Island. (ECF No. 1.) On April 11, 2011, Textron registered the judgment in this Court. (*Id.*) Thereafter, Textron was only able to collect $10,484.99 on the judgment. (ECF No. 56.)

On July 29, 2015, SPE LO filed a motion for a charging order against Gallegos' interest in two third party LLCs: Pacific Pearl Hotels, LLC ("PPH") and Pacific Pearl Hotel Management, LLC ("PPHM") (collectively "the LLCs"). (ECF No. 40.) The Court denied the motion without prejudice because SPE LO had not presented substantial evidence that Gallegos was a member of the entities. However, the Court recognized the "possibility that Gallegos has avoided entry of a charging order by playing coy," and therefore specifically authorized SPE LO to pursue postjudgment discovery. (ECF NO. 56.)

Thereafter, SPE LO served deposition subpoenas on PPH and PPHM. (ECF No. 63-2 at 71-83; 168-180.) The LLCs produced Adhe Homan to testify under Rule 30(b)(6) on behalf of both entities. Mr. Homan testified that he has worked for Gallegos-related entities since 1998, and is currently vice president of finance for both PPH and PPHM. (ECF No. 63-2 at 8-10, 23-24, 128.) PPH is a single-member LLC that was formed in November 2010, with Gallegos as the sole member and manager. (*Id.* at 84-89.) Gallegos was, and currently still is, also the president and CEO. (*Id.* at 29.) PPH is engaged in the business of hotel management, and currently manages numerous hotels. (*Id.* at 17, 43, 93-96.) Mr. Homan described PPH as an umbrella company over multiple other entities that directly employ the hotel workers at the properties contracted with PPH. (*Id.* at 140-143.) PPHM is one of these entities. (*Id.* at 131.) PPHM is also a single-member LLC, with Gallegos as its sole member at the time it was formed in May 2010. (*Id.* at 181-186) Gallegos assigned his 100% interest in PPHM to PPH on January 1, 2012. (*Id.* at 187.) Mr. Homan testified generally that PPH earns revenue from multiple sources, including: 1) receiving a percentage of the gross revenues of the hotel properties managed by companies that fall under the PPH umbrella, 2) charging for legal-consulting services to clients, and 3)

receiving revenue for managing hotels on behalf of other related hotel management companies. (*Id.* at 44-47, 57-58.)

Mr. Homan testified that Gallegos has never received any compensation from PPH, other than health insurance. (*Id.* at 27-30) He did not know if Gallegos had ever received an IRS K-1 form from PPH. (*Id.* at 30.) Mr. Homan stated that in March of 2015, Gallegos sold his 100% interest in PPH to a Russian investment company, Global Bancorp Commodities and Investment Inc. ("Global Bancorp") for $100.00. (*Id.* at 30-31.) There were no evaluations of the value of PPH conducted before the sale. (*Id.* at 31.) After the sale, Global Bancorp moved its principle place of business to the same address in San Diego as PPH. (*Id.* at 65-66, 122.) Gallegos also continued as the CEO and president of PPH after the sale. (*Id.* at 33-34.)

During the depositions, counsel for Gallegos repeatedly objected to SPE LO's questions as irrelevant or outside the scope of the deposition notices, and instructed Mr. Homan not to answer. (*See* ECF No. 63-3.) Specifically, he was instructed not to answer questions on the following topics: Mr. Homan's background and experience, the formation of PPH, Gallegos' potential interests in other related Gallegos entities, the revenues and profits of PPH and PPHM, and PPH and PPHM related entities. (*Id.*)

Following unsuccessful meet and conferred efforts, SPE LO filed the instant motion. (ECF No. 63.) SPE LO requests the Court compel further depositions of PPH and PPHM to permit SPE LO to obtain answers to the questions Gallegos' counsel objected to. SPE LO further requests monetary sanctions in the amount of $3,225.00, plus costs and attorney's fees associated with the further depositions of PPH and PPHM. Gallegos opposed the motion, arguing state law should control the scope of postjudgment discovery and that SPE LO's questions fell outside the scope permitted by California law.

## II. DISCUSSION

Federal Rule of Civil Procedure 69 governs the execution of judgments in federal court. Rule 69(a) provides:

(1) **Money Judgment; Applicable Procedure**. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

(2) **Obtaining Discovery**. In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

Fed.R.Civ.P 69(a).

Here, the execution procedures available to SPE LO are not at issue, and Gallegos does not dispute that PPH and PPHM are subject to discovery, including examination by deposition under Rule 69. What the parties disagree on, however, is the scope of the discovery. Gallegos contends that the plain language of Rule 69 makes it clear that state law controls, and that under California law, discovery is extremely limited. In contrast, SPE LO argues the Federal Rules govern, and broad discovery is allowed.

The parties' divergent views can be reconciled by understanding that Rule 69(a)(1) and (a)(2) describe "entirely separate aspects of the judgment enforcement process: the first relates to judgment execution *procedure* and supplemental proceedings thereto, while the other controls postjudgment *discovery*." *Fuddruckers, Inc. v. KCOB I, LLC*, 31 F.Supp.2d 1274, 1277 (D. Kan. 1998) (emphasis in original). The Court in *Fuddruckers* explained that under Rule 69(a)(1), state law dictates the nature, type and extent of execution procedures available to a judgment creditor in seeking to satisfy a judgment. *Id.* So here, one of the devices available to SPE LO under California law is a judgment debtor examination of third parties. *See* Cal. Code Civ. P. §§708.120-708.130; §187; *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 2014 WL 7467806 (S.D. Cal. Dec. 30, 2014).

In contrast, Rule 69(a)(2)'s "federal or state law 'option' relates only to postjudgment discovery." *Fuddruckers*, 31 F.Supp.2d at 1278. Under that provision of the rule, a judgment creditor has a *choice* of using either federal or state discovery methods. *Id.* Federal courts have consistently interpreted Rule 69 in this manner. *See e.g. El Salto, S.A. v. PSG Co.*, 444 F.2d 477, 484 n.3 (9th Cir. 1971) ("A judgment creditor proceeding under Rule 69(a) may utilize either state practice or the Federal Rules for taking depositions."); *F.D.I.C. v. LeGrand*, 43 F.3d 163, 171 (5th Cir. 1995) (holding a judgment creditor has the choice of which method of discovery to use under Rule 69); *Blaw Knox Corp. v. AMR Indus. Inc.*, 130 F.R.D. 400, 402 (E.D. Wis. 1990) (explaining that "when utilizing state collection procedures, Rule 69(a) then provides that a judgment creditor may obtain discovery and in so doing, may then either use the procedures set forth in the federal rules or those provided by the state"); *British Int'l Ins. Co. v. Seguros La Republica*, 200 F.R.D. 586, 589 (W.D. Tex. 2000) ("The literal text of Rule 69 allows the judgment creditor to elect to conduct discovery either under the applicable state law or the Federal Rules of Civil Procedure."); *Evans v. Chicago Football Franchise Ltd. P'ship*, 127 F.R.D. 492, 493 (N.D. Ill. 1989) (holding the language of Rule 69 "clearly contemplates that plaintiff has a choice between using the federal discovery rules and using the practice of the state"); *Rubin v. Islamic Republic of Iran*, 2008 U.S. Dist. LEXIS 4651, * (N.D. Ill. Jan. 18, 2000) (stating when a judgment creditor "choses to use the federal rules 'the post-judgment discovery proceeds according to the federal rules governing pre-trial discovery'"). Moreover, contrary to Gallegos' contentions, Rule 69(a)(2) permits judgment creditors to use federal discovery methods, even in diversity actions. *See British Int'l Ins. Co.* 200 F.R.D. 586 at 593-594 (rejecting argument that the court must apply state law to postjudgment discovery in a diversity action). Here, SPE LO has elected to pursue postjudgment discovery pursuant to the Federal Rules of Civil Procedure. Accordingly, the scope of discovery in this matter is governed by federal law.

Under federal law, the scope postjudgment discovery is very broad. "Debtor examinations are intended 'to allow the judgment creditor a wide scope of inquiry

concerning property and business affairs of the judgment debtor,' and 'to leave no stone unturned in the search for assets which might be used to satisfy the judgment.'" *Salameh v. Tarsadia Hotel*, 2016 WL 29618, *2 (S.D. Cal. Jan. 4. 2016) (citing *United States v Felman*, 324 F.Supp.2d 1112, 1116 (C.D. Cal. 2004)).  Thus, "the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974).  Even though Rule 69 discovery may resemble the proverbial fishing expedition, "a judgment creditor is *entitled* to fish for assets of the judgment debtor." *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, *4 (N.D. Cal. Dec. 19, 2009) (emphasis in original).  *See also Republic of Argentina v. NML Capital, Ltd.*, 134 S.Ct. 2250, 2254 (2014) ("The rules governing discovery in postjudgment execution proceedings are quite permissive.").

     Gallegos argues the questions his counsel objected to and instructed Mr. Homan not to answer – including questions about other entities that hadn't been subpoenaed, the confidential financial information of PPH and PPHM, and Mr. Homan's personal knowledge of Gallegos' assets – are outside the scope permitted by law because PPH and PPHM are third parties.  Thus, Gallegos urges the Court to find that SPE LO only has a right to know whether Gallegos has an interest in the LLCs and whether the LLCs owe Gallegos any money, and nothing more.

     "There is no doubt that third parties can be examined in relation to the financial affairs of the judgment debtor." *Caisson Corp.*, 62 F.R.D. at 335.  Generally, a judgment creditor may inquire into a third party's knowledge of the judgment debtor's assets, but inquiry into the assets and finances of the third party is not permitted. *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D. N.Y.1977).  However, there are exceptions to this rule. *Id.*  Discovery into a third party's assets is permissible "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Id.*  *See also Falicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 9 (D.C. 2006) (allowing discovery of two

non-party companies that were owned by members of the same family that owned the judgment debtor corporation where there was evidence in the record that the two companies were not business pursuits created totally independent from the judgment debtor, and in fact appeared to be veiled attempts to hide the assets of the judgment debtor).

Here, SPE LO has shown sufficient information about the relationship between Gallegos and PPH and PPHM, and other entities related to the LLCs, to warrant further inquiry into the assets and finances of the LLCs and other entities.  In addition, the less than orthodox business transaction between Gallegos and Global Bancorp weighs in favor of further discovery.  The Court finds the line of questioning SPE LO pursued at the depositions was appropriate to ferret out potential fraud, and uncover assets which might be used to satisfy the judgment.  For instance, SPE LO's inquiries about other entities is relevant to determine if any other entities have property in which Gallegos has an interest.  SPE LO's questions as to why PPH and other entities were formed is relevant in light of the allegations of asset hiding and to ascertain if Gallegos' conveyances and transfers are fraudulent.  SPE LO's questions will also be relevant to the Court's future determination of whether SPE LO is entitled to the issuance of a charge order against the LLCs or other entities related to Gallegos.  In sum, the Court finds SPE LO has raised a reasonable doubt about the bona fides of the transfer of assets between Gallegos and the LLCs to justify expanded third party discovery.  Accordingly, Gallegos's objections based on relevance and scope are overruled.[2]  The Court grants SPE LO's motion to compel further depositions of PPH and PPHM, and will permit the general scope of examination proposed by SPE LO.

---

[2] The Court also rejects Gallegos' argument that Judge Burns' October 7, 2015 Order (ECF No. 56) limited SPE LO's discovery to determining whether Gallegos was a member or either PPH or PPHM.  The issue of the scope of discovery was simply not before the Court at that juncture.  The Court finds Judge Burns' Order was intended to only to direct SPE LO to go pursue discovery before returning to Court with its motion for a charging order.

The Court further notes that Gallegos' objections on the basis that SPE LO's questions exceeded the scope of the deposition notice, and his counsel's direction to the witness not to answer questions, were improper. A deposition notice does not control the scope of the deposition. *See Campbell v. Facebook, Inc.*, 310 F.R.D. 439, (N.D. Cal. 2015) (noting the scope of questioning is not defined by the notice of deposition, but by Rule 26(b)(1)); *Employers Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, 2006 WL 1120632, *1 (E.D.N.Y. 2006) ("[A] notice of deposition cannot be used to limit what is asked of the designated witness, but rather, it 'constitute[s] the minimum, not the maximum, about which a deponent must be prepared to speak.'"); *UniRAM Technology, Inc. v. Monolithic Sys. Tech. Inc.*, 2007 WL 915225, *2 (N.D. Cal. March 23, 2007) ("[T]he 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at deposition."); *Stevens v. Corelogic, Inc.*, 2015 WL 8492501, at *4 (S.D. Cal. Dec. 10, 2015) ("The scope of a deposition as described in a Federal Rule of Civil Procedure 30(b)(6) notice is intended to provide the minimum information about which a witness must be prepared to testify at the deposition, not the maximum."). Moreover, it is well-established that "[t]he irrelevancy of a question is not grounds to instruct a witness not to answer the question." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D. Nev. 1998). The only proper basis for counsel to instruct a witness not to answer is "when necessary to preserve a privilege, enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed.R.Civ.P. 30(c)(2). None of those circumstances were present here. Therefore, Gallegos' counsel is admonished that any further direction to a witness not to answer a question that is not based on an asserted privilege, or other permissible ground under Rule 30, may lead to sanctions.

The Court acknowledges that Gallegos has expressed concern that the information sought by SPE LO constitutes the private financial information of PPH and PPHM. In the circumstances of this case, the Court finds SPE LO's interest in collecting on its judgment outweighs the privacy interests of the LLCs, particularly based on the nexus between Gallegos and the third party entities. The Court finds that any concerns about PPH or

PPHM's financial privacy can be addressed through an appropriate protective order, which is exactly what SPE LO proposed during the deposition of PPH. (*See* ECF No. 63-2 at 18-19.) Therefore, the parties are directed to meet and confer regarding a stipulated protective order.

Finally, SPE LO requests that the Court impose monetary sanctions against Gallegos' counsel in the amount of $3,225.00, plus SPE LO's costs and attorney's fees incurred in re-deposing PPH and PPHM. The Court, in its discretion, declines to issue sanctions at this time. However, Gallegos is advised that further obstructive conduct may lead to sanctions.

### III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that SPE LO's Motion to Compel Further Depositions is **GRANTED in part** and **DENIED in part**. PPH and PPHM shall produce an appropriate witness for further depositions. The depositions shall be limited to an additional four (4) hours for each entity (for 8 hours total).

IT IS SO ORDERED.

Dated: August 1, 2016

DAVID H. BARTICK
United States Magistrate Judge