UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| TEXTRON FINANCIAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL S. GALLEGOS,<br><br>Defendant. | Case No.: 15cv1678-LAB (DHB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER RE JENNIFER GAGHEN**<br><br>**[ECF No. 66]** |
|---|---|

On May 17, 2016, Judgment Debtor, Michael S. Gallegos ("Gallegos") filed a motion for protective order regarding the deposition of Jennifer Gaghen. (ECF No. 66.) On July 5, 2016, Judgment Creditor, SPE LO Holdings ("SPE LO"), assignee of Textron Financial Corporation ("Textron"), filed an opposition. (ECF No. 78.) Gallegos did not file a reply. Having considered the parties' submissions, the Court hereby **DENIES** Gallegos' motion as set forth below.

## I. BACKGROUND

On November 30, 2010, Textron obtained a judgment against Gallegos in the amount of $21,921,165.45 in the United States District Court for the District of Rhode Island. (ECF

No. 1.) On April 11, 2011, Textron registered the judgment in this Court. (*Id.*) Thereafter, Textron was only able to collect $10,484.99 on the judgment. (ECF No. 56.)

On May 2, 2016, SPE LO served a deposition subpoena on Jennifer L. Gaghen ("Gaghen"). (ECF No. 66-2 at 5-8.) For the last 15 years Gaghen has been Gallegos' personal attorney and the corporate counsel for a number of Gallegos-related entities. (ECF No. 66-3 at ¶ 2.) SPE LO seeks to depose Gaghen on several topics, including the legal entities Gallegos created and his relationship with each one, facts about the sale of Pacific Pearl Hotels ("PPH") for $100 in March 2015, and the identity of other assets or income streams owned by Gallegos. (ECF No. 76 at 5.)

On May 17, 2016, Gallegos filed the instant Motion for Protective Order requesting the Court prohibit the deposition of Gaghen from going forward. (ECF No. 66.) Gallegos argues SPE LO has not demonstrated the propriety or need for Gaghen's deposition, and that the information SPE LO seeks is protected by the attorney-client privilege or work product doctrine.

On June 2, 2016, the Court temporarily stayed the deposition of Gaghen pending resolution of this motion. (ECF No. 77.)

## II. DISCUSSION

The Federal Rules of Civil Procedure authorize the court, upon a showing of good cause, to issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of establishing good cause. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004). "'Good cause' is established where it is specifically demonstrated that disclosure will cause a 'specific prejudice or harm.'" *Id.* (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citing *Phillips*, 307 F.3d at 1211-12).

Neither the Federal Rules of Civil Procedure, nor the Federal Rules of Evidence prohibit the taking of attorney depositions. In fact, Federal Rule of Civil Procedure 30(a)

provides that a party may depose "any person." Fed.R.Civ.P. 30(a). However, courts have recognized that depositions of an opposing party's trial counsel can have a negative impact on the litigation process, and are therefore discouraged as a means of discovery. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987).

In *Shelton v. American Motor Corp.*, the Eighth Circuit set out a three-part test for determining when it is appropriate to depose opposing counsel. *Shelton*, 805 F.2d at 1327. The Ninth Circuit has not addressed whether *Shelton* provides the proper framework for determining when an attorney deposition is proper. However, *Shelton* is generally considered the leading authority, and has been adopted in this district. *See Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 585-89 (S.D. Cal. 1995).

In *Shelton*, the Court explained that permitting depositions of opposing counsel "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Shelton*, 805 F.2d at 1327. The *Shelton* Court also noted that allowing such depositions could permit opposing counsel to glean privileged information about the opponent's litigation strategy. *Id.* Yet, *Shelton* recognized that under certain circumstances, the taking of opposing counsel's deposition would be warranted. *Id.* Therefore, *Shelton* held the party seeking to take the deposition of opposing counsel must show that: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id. See also Krieger*, 160 F.R.D. at 588 (stating there are circumstances "under which the deposition of a party's attorney will be both necessary and appropriate, for example, where the attorney is a fact witness, such as an 'actor or a viewer'").

However, the *Shelton* test is not necessarily applicable in a situation where the attorney sought to be deposed is not litigation counsel in the pending case. In *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (2002), the Eighth Circuit explained:

> The *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the

> disclosure of the attorney's litigation strategy.  Because this abuse of the discovery process had become an ever increasing practice, this Court erected the *Shelton* test as a barrier to protect trial attorneys from these depositions. But *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection *Shelton* provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case.

*Pamida*, 281 F.3d at 730 (internal citations omitted).  Several district courts have adopted this reasoning, and have determined the *Shelton* test only applies when opposing litigation counsel are being deposed.  *See e.g. U.S. v. Philip Morris Inc.*, 209 F.R.D. 13 (D.D.C. 2002) ("Thus, *Pamida* makes clear that the three *Shelton* criteria apply to limit deposition questions of attorneys in only two instances: (1) when trial or litigation counsel are being deposed and (2) when such questioning would expose litigation strategy in the pending case."); *Ellipsis, Inc. v. Color Works, Inc.*, 227 F.R.D. 496 (W.D. Tenn. 2005) (same); *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472 (N.D. Cal. 1998) (holding plaintiff only had to show that defendant's divorce attorney had relevant non-privileged information in order to depose the attorney, because the divorce attorney did not represent the defendant in the case at hand); *Devlyne v. Lassen Mun. Utility Dist.*, 2011 WL 4905672 (E.D. Cal. Oct. 14, 2011) (holding "the *Shelton* criteria apply only when trial and/or litigation counsel are being deposed and the questioning would expose litigation strategy in the pending case"); *Thomas v. Cate*, 2010 WL 1343789 (E.D. Cal. April 5, 2010) (finding the *Shelton* test did not provide the appropriate framework for determining whether an attorney deposition was appropriate where the Petitioner was not seeking to depose the attorney's responsible for litigating the case before the court).

Here, there is no evidence Gaghen was trial or litigation counsel in the underlying case, and she does not represent Gallegos in these postjudgment proceedings.  It also does not appear that permitting SPE LO to question Gaghen about facts related to Gallegos'

assets and income streams would expose litigation strategy. Therefore, because SPE LO is not seeking to depose adversary counsel, the *Shelton* test does not apply. *See Light Salt Investments, LP v. Fisher*, 2013 WL 3205918 (S.D. Cal. June 24, 2013) (noting that *Shelton* criteria was not necessarily applicable where the attorney sought to be deposed was corporate counsel who did not represent any party in the case).

Nevertheless, even if the Court considers the *Shelton* criteria, the Court finds SPE LO should be allowed to depose Gaghen. First, Gaghen has been involved with Gallegos and his businesses for over 15 years, is corporate counsel for PPH and other Gallegos-related entities, and has "intimate knowledge" of Gallegos' personal and business affairs. (ECF No. 66-3 at ¶2.) As general counsel, Gaghen likely has substantial factual information about Gallegos' entities and his relationship with them. It does not appear that any other person would have the same knowledge regarding the totality of the circumstances surrounding the business dealings of the Gallegos-related entities and potential assets and income streams of Gallegos. Gallegos implies that SPE LO could obtain the information it seeks from other "non-privileged sources," which are presumably the multiple Gallegos-related entities themselves. However, the Court finds this argument specious in light of Gallegos' efforts to thwart the prior Rule 30(b)(6) depositions of PPH and PPHM. (*See e.g.* ECF Nos. 62, 80.) Therefore, the Court finds Gaghen is likely the most complete source from whom SPE LO can elicit facts that may assist it in enforcing the judgment against Gallegos.

Second, the information SPE LO seeks from Gaghen, such as asking her to name all the entities within the PPH umbrella, identify Gallegos' interests in each entity, and asking her about the sale of PPH for $100, is clearly relevant to SPE LO's efforts to identify assets that can be used to satisfy the judgment. At the same time, Gallegos understandably argues that Gaghen's deposition raises issues of attorney-client privilege. However, the privilege only protects communications between Gallegos and Gaghen from disclosure, not underlying facts known by Gaghen. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *State Farm Fire and Cas. Co. v. Superior Court*, 54 Cal. App. 4th 625, 639 (1997)

("[T]he attorney-client privilege only protects disclosure of *communications* between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication."). SPE LO indicates that it only seeks to elicit factual information from Gaghen and does not intend to ask about communications she has had with Gallegos. The Court believes SPE LO can fashion its questioning in a manner to avoid intruding upon the attorney-client privilege. Further, Gallegos retains his right to object on the grounds of attorney-client privilege if it becomes necessary.

Gallegos also argues the information sought by SPE LO may be protected by the work product doctrine. However, the work product doctrine is not applicable here. The work product doctrine only applies to documents that were "prepared in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(3)(A). *See also Pas Vidal v. Metro-North Commuter Railway Co.*, 2014 WL 413952, * (D.Conn. Feb. 4, 2014) (finding the work product doctrine does not protect post-judgment documents from disclosure).

Third, the Court finds the information sought from Gaghen is crucial to SPE LO's efforts to enforce the judgment against Gallegos. To date, SPE LO has only been able to collect a small percentage of the outstanding judgment. Moreover, SPE LO has raised legitimate concerns regarding the transfer of Gallegos' assets, such as the sale of Gallegos' interest in PPH. Given Gaghen's history with the Gallegos-related entities, and her "intimate knowledge" of Gallegos' dealings, the Court finds it is appropriate and necessary to allow SPE LO to depose her.

In sum, the Court finds that the *Shelton* test does not apply because Gaghen is not litigation or trial counsel, and there is no indication that allowing her deposition to go forward would expose litigation strategy. Gallegos has not otherwise met his burden to show a protective order should be issued under Rule 26. The Court does not find Gaghen's deposition is being sought for purposes of harassment or to unduly burden Gallegos. Nor does the Court find that Gallegos' concern about the attorney-client privilege amounts to good cause for a protective order. Further, even if the Court applies *Shelton*, it would not reach a different result. The Court finds SPE LO should be permitted to depose Gaghen.

Accordingly, the Court denies Gallegos' request for a protective order prohibiting the deposition of Gaghen.

### III. CONCLUSION

For the foregoing reasons, Gallegos' Motion for Protective Order Regarding Jennifer Gaghen is **DENIED**. The stay of Gaghen's deposition, which was entered on June 2, 2016 (ECF No. 77) is hereby lifted.

IT IS SO ORDERED.

Dated: August 5, 2016

DAVID H. BARTICK
United States Magistrate Judge